1  EILEEN M. DECKER
   United States Attorney
2  THOMAS D. COKER
   Assistant United States Attorney
3  Chief, Tax Division
   ROBERT F. CONTE (Cal. Bar No. 157582)
4  Assistant United States Attorney
        300 North Los Angeles Street
5       Federal Building, Room 7211
        Los Angeles, California  90012
6       Telephone: (213) 894-6607
        Facsimile: (213) 894-0115
7       E-mail: robert.conte@usdoj.gov
   JORGE ALMONTE
8  Assistant Chief (DC Bar No. 481391)
   JASON M. SCHEFF
9  Trial Attorney (NY Bar No. 5188701)
   U.S. Department of Justice, Tax Division
10      601 D Street, N.W., Room 7548
        Washington, D.C.  20004
11      Telephone: (202) 305-3676
        Facsimile: (202) 616-1786
12      E-mail: jorge.almonte@usdoj.gov
               jason.m.scheff@usdoj.gov
13

14              UNITED STATES DISTRICT COURT

15        FOR THE CENTRAL DISTRICT OF CALIFORNIA

16                   WESTERN DIVISION

17

18  UNITED STATES OF AMERICA,        No. CR 16-SA **CR 16 00153**

19             Plaintiff,            PLEA AGREEMENT FOR DEFENDANT
                                     DAN FARHAD KALILI
20             v.

21  DAN FARHAD KALILI,

22             Defendant.

23

24        1.  This constitutes the plea agreement between DAN FARHAD

25  KALILI ("defendant") and the United States Attorney's Office for

26  the Central District of California and the U.S. Department of

27

28                            1

Justice, Tax Division (collectively the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2. Defendant agrees:

a) To give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a one-count Information in the form attached to this agreement or a substantially similar form, which charges defendant with willful failure to file a report of foreign bank and financial accounts ("FBAR"), in violation of 31 U.S.C. §§ 5314 and 5322(a), and 31 C.F.R. §§ 1010.350, 1010.306(c, d), and 1010.840(b).

b) To not contest the facts agreed to in this agreement.

c) To abide by all agreements regarding sentencing contained in this agreement.

d) To appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court orders in this matter.

e) To not commit any crime; however, offenses that would be excluded for sentencing purposes under the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

   f) To be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

   g) To pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and submits a completed financial statement on a form to be provided by the USAO.

   h)   To make full restitution for the losses caused by defendant's activities.  Defendant will pay restitution prior to sentencing, based on his financial ability to pay.  Defendant will not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

   i)   To cooperate with the IRS in the civil examination, determination, assessment and collection of income taxes related to defendant's 2003 through 2009 individual income tax returns and any related corporate/entity tax returns, and further agrees not to conceal, transfer, or dissipate funds or property that could be used to satisfy such taxes, penalties and interest.

   j) To give up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service ("IRS") receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas and other legal process.

   k) That defendant is liable for the civil fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663,

3

on the understatement of his individual income taxes for
calendar years 2003 through 2009.  Defendant agrees that a civil
penalty under 26 U.S.C. § 6663 may be assessed against him.

l) That nothing in this agreement shall preclude or
bar the IRS from the assessment and/or collection of any
additional tax liability, including interest and penalties,
determined to be due and owing from defendant for the years 2003
through 2009.

m) That, in order to resolve defendant's civil
liability for failing to file a Report of Foreign Bank and
Financial Accounts, Forms TD F 90-22.1, and other foreign
information reporting obligations under the United States law,
for calendar year 2009, defendant will pay a civil penalty to
the IRS equal to fifty percent of the highest total balance of
each of the foreign financial accounts in which defendant had a
financial interest, or over which defendant had signature or
other authority, during calendar year 2009.  Based upon
information now available to the USAO (including representations
by defendant), the parties agree that the civil penalty to be
paid shall not be less than $2,674,329, representing defendant's
portion of fifty percent of the balance in an account in
Switzerland, and fifty percent of the balance in the accounts in
Israel, in which defendant had a financial interest, or over
which defendant had signature authority, as of June 2009 and
December 2009, respectively.  Defendant agrees to pay the civil
penalty prior to sentencing to the United States Treasury,
through the U.S. Department of Justice, Tax Division.

4

1        n) To agree to and not oppose the imposition of the

2   following conditions of probation or supervised release: that

3   defendant shall cooperate with the payment of all delinquent

4   federal and state taxes, and any related penalties and interest,

5   that may be imposed; that defendant shall truthfully and timely

6   file and pay taxes due during the period of supervised release;

7   and that defendant will show proof to the Probation Officer of

8   his compliance with the aforementioned conditions of supervised

9   release.

                           THE USAO'S OBLIGATIONS

11      3.   The USAO agrees to:

12         a) Not contest the facts agreed to in this agreement.

13         b) Abide by all agreements regarding sentencing

14  factors contained in this agreement.

15         c) At the time of sentencing, provided that defendant

16  demonstrates an acceptance of responsibility for the offense up

17  to and including the time of sentencing, recommend a two-level

18  reduction in the applicable Sentencing Guideline offense level,

19  pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary,

20  move for an additional one-level reduction if available under

21  that section.

22         d) Not further criminally prosecute defendant for

23  violations arising out of defendant's conduct described in the

24  agreed-to factual basis set forth below.  Defendant understands

25  that the USAO is free to criminally prosecute defendant for any

26  other unlawful past conduct or any unlawful conduct that occurs

27  after the date of this agreement.  Defendant agrees that at the

28                             5

1  time of sentencing, the Court may consider the uncharged conduct

2  in determining the applicable Sentencing Guidelines range, the

3  propriety and extent of any departure from that range, and the

4  sentence to be imposed after consideration of the Sentencing

5  Guidelines and all other relevant factors under 18 U.S.C. §

6  3553(a).

7                          NATURE OF THE OFFENSE

8       4.   Defendant understands that for defendant to be guilty

9  of the crime charged in count one of the Information, a

10  violation of 31 U.S.C. §§ 5314 and 5322(a), and 31 C.F.R. §§

11  1010.350, 1010.306(c, d), and 1010.840(b), the following must be

12  true:

13       a) Defendant must have had a financial interest in, or

14  signature or other authority over, a financial account in a

15  foreign country with an aggregate value of more than $10,000 at

16  any time during the calendar year 2009;

17       b) Defendant must have failed to file, with the Department

18  of Treasury, a Report of Foreign Bank and Financial Accounts

19  (Form TD F 90-22.1 "FBAR"), for the calendar year 2009, on or

20  before June 30 of the following calendar year; and

21       c) In failing to file the FBAR for the calendar year 2009,

22  defendant must have acted willfully.

23       Defendant admits that he is, in fact, guilty of the offense

24  as described in count one of the Information.

25                       PENALTIES AND RESTITUTION

26       5.   Defendant understands that the statutory maximum

27  sentence that the Court can impose for a violation of 31 U.S.C.

28                                    6

§§ 5314 and 5322(a) and 31 C.F.R. §§ 1010.350, 1010.306(c, d), and 1010.840(b) is: 5 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100.  Defendant agrees to pay the special assessment at or before the time of sentencing.

6.   Defendant agrees to make full restitution for the losses caused by defendant's activities.  Defendant understands and agrees that the Court: (a) may order defendant to pay restitution in the form of any additional taxes, interest and penalties that defendant owes to the United States based upon the losses caused by defendant's activities; (b) may order defendant to pay any additional fines that defendant owes to the United States; and (c) may order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above.  The parties agree that the restitution that should be ordered shall not be less than $337,443 for the years 2003 through 2009.

7.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant

1    serving a total term of imprisonment greater than the statutory

2    maximum as stated above.

3        8.   Defendant understands that, by pleading guilty,

4    defendant may be giving up valuable government benefits and

5    valuable civic rights, such as the right to vote, the right to

6    possess a firearm, the right to hold office, and the right to

7    serve on a jury.  Defendant understands that once the Court

8    accepts defendant's guilty plea, it will be a federal felony for

9    defendant to possess a firearm or ammunition.  Defendant

10   understands the conviction in this case may subject defendant to

11   various collateral consequences, including but not limited to,

12   revocation of probation, parole, or supervised release in

13   another case, and suspension or revocation of a professional

14   license.  Defendant understands that unanticipated collateral

15   consequences will not serve as grounds to withdraw defendant's

16   plea of guilty.

17       9.   Defendant understands that, if defendant is not a

18   United States citizen, the felony conviction in this case may

19   subject defendant to: removal, also known as deportation, which

20   may, under some circumstances, be mandatory; denial of

21   citizenship; and denial of admission to the United States in the

22   future.  The Court cannot, and defendant's attorney also may not

23   be able to, advise defendant fully regarding the immigration

24   consequences of the felony conviction in this case.  Defendant

25   understands that unexpected immigration consequences will not

26   serve as grounds to withdraw defendant's guilty plea.

27   ///

28                                  8

## FACTUAL BASIS

10.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree that the statement of facts contained in Attachment A and fully incorporated herein is sufficient to support defendant's guilty plea to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in the paragraphs below, but is not meant to be a complete recitation of all the facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

## SENTENCING FACTORS

11.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.   Defendant and the USAO agree and stipulate to the following applicable sentencing guideline factors, utilizing the U.S.S.G. in effect on November 1, 2015:

a) Count one of the Information is governed by U.S.S.G. § 2S1.3.

b) Because the offense was committed for the purposes of violating the Internal Revenue laws and because the resulting offense level is greater under Chapter Two, Part T, than that determined by operation of U.S.S.G. § 2S1.3(a-b), the most appropriate guideline from Chapter Two, Part T, applies, pursuant to U.S.S.G. § 2S1.3(c)(1).

c) The most appropriate guideline from Chapter Two, Part T, is U.S.S.G. § 2T1.1.  The base offense level is determined from Section 2T4.1 (Tax Table) corresponding to the tax loss.

d) Because the tax loss is more than $250,000, but not more than $550,000, the base offense level applicable to count one of the Information is 18, pursuant to U.S.S.G. §§ 2T1.1(a)(1), 2T4.1(G).

e) Because the offense involved sophisticated means, the offense level is increased by 2 levels, pursuant to U.S.S.G. § 2T1.1(b)(2).

| | | |
|---|---|---|
| Base Offense Level: | 18 | [§§ 2T1.1 & 2T4.1] |
| Specific Offense Characteristics:<br>    Sophisticated Means | 2 | [§ 2T1.1(b)(2)] |
| Downward Departure:<br>    Acceptance of<br>    Responsibility | (3) | [§§ 3E1.1(a), (b)] |
| **Total Offense Level:** | **17** | |

10

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth under paragraph 2, above, are met.

Subject to paragraph 24 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the calculation of the offense level under the Guidelines be imposed.

Defendant reserves the right to argue for a more lenient sentence from the sentence suggested under the Sentencing Guidelines by arguing factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7). The USAO reserves the right to oppose these arguments, and may argue that the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7) support a term of imprisonment within the applicable Sentencing Guidelines range, provided that the total offense level used by the Court to determine the guideline range is 17 or higher and defendant's criminal history category is I.

Defendant agrees that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within

1   the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek

2   the enhancement set forth in that section.

3      13.   Defendant understands that there is no agreement as to

4   defendant's criminal history or criminal history category.

5                WAIVER OF CONSTITUTIONAL RIGHTS

6      14.   Defendant understands that by pleading guilty,

7   defendant gives up the following rights:

8          a) The right to persist in a plea of not guilty.

9          b) The right to a speedy and public trial by jury.

10         c) The right to be represented by counsel -- and if

11   necessary have the Court appoint counsel -- at trial.  Defendant

12   understands, however, that, defendant retains the right to be

13   represented by counsel -- and, if necessary, to have the Court

14   appoint counsel -- at every other stage of the proceeding.

15         d) The right to be presumed innocent and to have the

16   burden of proof placed on the government to prove defendant

17   guilty beyond a reasonable doubt.

18         e) The right to confront and cross-examine witnesses

19   against defendant.

20         f) The right to testify and to present evidence in

21   opposition to the charges, including the right to compel the

22   attendance of witnesses to testify.

23         g) The right not to be compelled to testify, and, if

24   defendant chose not to testify or present evidence, to have that

25   choice not be used against defendant.

26

27

28                        12

1        h) Any and all rights to pursue any affirmative

2  defenses, Fourth Amendment or Fifth Amendment claims, and other

3  pretrial motions that have been filed or could be filed.

4                  ADDITIONAL WAIVERS

5    15.  Defendant hereby consents to prosecution on the charge

6  contained in the Information in the Central District of

7  California and waives and gives up any right to:

8        a) Challenge such prosecution on the basis of venue or

9  statute of limitations.

10        b) Seek the transfer of this action to another

11  district.

12           WAIVER OF APPEAL OF CONVICTION

13    16.  Defendant understands that, with the exception of an

14  appeal based on a claim that defendant's guilty plea was

15  involuntary, by pleading guilty defendant is waiving and giving

16  up any right to appeal defendant's conviction on the offense to

17  which defendant is pleading guilty.

18         LIMITED MUTUAL WAIVER OF APPEAL

19    17.  Defendant agrees that, provided that the Court imposes

20  a total term of imprisonment on the count of conviction within

21  or below the range corresponding to a total offense level of 17

22  and the criminal history category calculated by the Court,

23  defendant gives up the right to appeal all of the following:

24  (a) the procedures and calculations used to determine and impose

25  any portion of the sentence; (b) the term of imprisonment

26  imposed by the Court; (c) the fine imposed by the Court,

27  provided it is within the statutory maximum; (d) the amount and

28                        13

terms of any restitution ordered, provided it requires payment
of no more than $337,443; (e) the term of probation or
supervised release imposed by the Court, provided it is within
the statutory maximum; (f) any of the following conditions of
probation or supervised release imposed by the Court: the
conditions set forth in General Orders 318, 01-15, and/or 05-02
of this Court; the drug testing conditions mandated by 18 U.S.C.
§§ 3563(a)(5) and 3583(d); and the alcohol and drug use
conditions authorized by 18 U.S.C. § 3563(b); and (g) any
condition of probation or supervised release agreed to by
defendant in paragraph 2, above.

18.  The USAO agrees that, provided (a) all portions of the
sentence are at or below the statutory maximum specified above
and (b) the Court imposes a term of imprisonment within or above
the range corresponding to a total offense level of 17 and the
criminal history category calculated by the Court, the USAO
gives up its right to appeal any portion of the sentence, with
the exception that the USAO reserves the right to appeal the
amount of restitution ordered if that amount is less than
$337,443.

RESULT OF WITHDRAWAL OF GUILTY PLEA

19.  Defendant agrees that if, after entering a guilty plea
pursuant to this agreement, defendant seeks to withdraw and
succeeds in withdrawing defendant's plea of guilty on any basis
other than a claim and finding that entry into this plea
agreement was involuntary, then (a) the USAO will be relieved of
all of its obligations under this agreement; and (b) should the

14

USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

20.  This agreement is effective upon signature and execution by defendant, defendant's counsel, and an attorney authorized to represent the USAO.

BREACH OF AGREEMENT

21.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an attorney authorized to represent the USAO, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously

15

1  entered a guilty plea pursuant to this agreement, defendant will

2  not be able to withdraw the plea of guilty, and (b) the USAO

3  will be relieved of all of its obligations under this agreement.

4      22.  Following the Court's finding of a knowing and willful

5  breach of this agreement by defendant, should the USAO elect to

6  pursue any charge or any civil, administrative, or regulatory

7  action that was not filed as a result of this agreement, then:

8          a) Defendant agrees that any applicable statute of

9  limitations is tolled between the date of defendant's signing of

10 this agreement and the commencement of any such action.

11         b) Defendant waives and gives up all defenses based on

12 the statute of limitations, any claim of pre-indictment delay,

13 or any speedy trial claim with respect to any such action,

14 except to the extent that such defenses existed as of the date

15 of defendant's signing this agreement.

16         c) Defendant agrees that: (i) any statements made by

17 defendant, under oath, at the guilty plea hearing (if such a

18 hearing occurred prior to the breach); (ii) the agreed-to

19 factual basis statement in this agreement; and (iii) any

20 evidence derived from such statements, shall be admissible

21 against defendant in any such action against defendant, and

22 defendant waives and gives up any claim under the United States

23 Constitution, any statute, Rule 410 of the Federal Rules of

24 Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure,

25 or any other federal rule, that the statements or any evidence

26 derived from any statements should be suppressed or are

27 inadmissible.

28                                     16

## COURT AND PROBATION OFFICE NOT PARTIES

23.   Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

24.   Defendant understands and agrees that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations are not in error, although each party agrees to maintain its views that the calculations in paragraph 12 are consistent with the facts of this case.   While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

25.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's plea of guilty, and defendant will remain bound to fulfill all defendant's

obligations under this agreement.  Defendant understands that no one – not the prosecutor, defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

26.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in Court.

///

///

1          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2          27.   The parties agree that this agreement will be

3    considered part of the record of defendant's guilty plea hearing

4    as if the entire agreement had been read into the record of the

5    proceeding.

6

7    AGREED AND ACCEPTED

8    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

10   EILEEN M. DECKER
     United States Attorney

11

12   _Jason M Scheff_____          _11/8/16_____

13   JORGE ALMONTE                     Date
     Assistant Chief

14   JASON M. SCHEFF
     Trial Attorney

15   U.S. Department of Justice

16   Tax Division

17   THOMAS D. COKER
     Assistant United States Attorney

18   Chief, Tax Division

19   ROBERT F. CONTE
     Assistant United States Attorney

20

21   _____           _10/10/2016___

22   DAN FARHAD KALILI                 Date
     Defendant

23

24                                     _10/10/2016___

25   EDWARD M. ROBBINS, JR., Esq.       Date
     Counsel for Defendant

26   DAN FARHAD KALILI

27

28                        19

1                 ATTACHMENT A- FACTUAL BASIS

2    (a)   At all times relevant to the Information, DAN FARHAD

3 KALILI (hereinafter "defendant"), resided in Irvine, California,

4 and was a citizen of the United States of America.

5    (b)   At all times relevant to the Information, defendant

6 was a United States taxpayer.  U.S. taxpayers who have a

7 financial interest in, or signature authority over, a bank,

8 securities, or other financial account in a foreign country with

9 an aggregate value of more than $10,000 at any time during a

10 particular calendar year are required to file with the Internal

11 Revenue Service ("IRS") a Report of Foreign Bank and Financial

12 Accounts, Form TD F 90-22.1 ("FBAR").  The FBAR for any calendar

13 year is required to be filed on or before June 30 of the

14 following calendar year.  The FBAR requires that the filer

15 identify the financial institution with which the account is

16 held, the type of account (either bank, securities, or other),

17 the account number, and the maximum value of the account during

18 the calendar year for which the FBAR is being filed.

19    (c)   Beginning in or around May 1996, and continuing

20 through at least in or about May 2009, defendant had a financial

21 interest in, and signature and other authority over several

22 undeclared accounts at Credit Suisse in Switzerland.  From at

23 least in or about 1998 until at least in or about 2008,

24 defendant had a financial interest in, and signature and other

25 authority over several undeclared accounts at UBS AG ("UBS") in

26 Switzerland.  Beginning in or about 2009, defendant also had a

27 financial interest in, and signature and other authority over,

28                          20

1   undeclared accounts at Israeli Bank A in Israel, and Bank Leumi

2   in Israel.  From at least in or about 1998 until at least in or

3   about 2009, the undeclared accounts in which defendant had a

4   financial interest, and over which defendant had signature and

5   other authority, had an aggregate value of more than $10,000.

6        (d) On or about May 28, 1996, defendant opened an

7   undeclared account at Credit Suisse in his name (the "Undeclared

8   Dan Kalili Credit Suisse Account").  On account opening

9   documents for the Undeclared Dan Kalili Credit Suisse Account,

10  defendant listed that he resided in California.  At all times

11  relevant, this account had an aggregate value of more than

12  $10,000.

13       (e) In or about 1998, defendant opened an undeclared

14  account at UBS in his own name (the "First Undeclared Dan Kalili

15  UBS Account").  This account was a numbered account, meaning

16  that only an account number, as opposed to defendant's name,

17  appeared on most account documents in order to minimize the

18  amount of documents that associated defendant with the account.

19       (f) In or around October 1998, defendant directed a UBS

20  Client Advisor to open an account in the name of his brother,

21  David Kalili, and to transfer approximately 44 percent of

22  defendant's portfolio into a numbered undeclared account that

23  David Kalili had previously opened at UBS (the "First Undeclared

24  David Kalili UBS Account").

25       (g) In or about April 2002, defendant's brother-in-law,

26  David Azarian, who had previously opened a numbered undeclared

27  account at UBS, opened a second undeclared account at UBS (the

28                              21

"Second Undeclared Azarian UBS Account"). Azarian provided defendant with power of attorney over the Second Undeclared Azarian UBS Account.

(h) On or about June 30, 2003, defendant and David Kalili opened a joint numbered undeclared account at UBS held in their names (the "Undeclared Joint Kalilis UBS Account"). Funds from the First Undeclared Dan Kalili UBS Account were transferred to the Undeclared Joint Kalilis UBS Account. In or about 2008, the Undeclared Joint Kalilis UBS Account contained approximately $3,350,284 in assets.

(i) On or about July 19, 2004, defendant and David Kalili opened a joint undeclared account at Credit Suisse held in their names (the "Undeclared Joint Kalilis Credit Suisse Account"). At all times relevant, this account had an aggregate value of more than $10,000.

(j) On or about July 4, 2006, defendant, with the assistance of Beda Singenberger ("Singenberger"), a Swiss citizen who owned and operated a financial advisory firm called Sinco Truehand AG ("Sinco"), opened an undeclared account at UBS held in the name of the Colsa Foundation (the "UBS Colsa Account"), an entity established under the laws of Liechtenstein. The account opening documents listed Singenberger and three other Sinco employees as authorized signatories for the UBS Colsa Account. Another document, referred to as a "Form A," listed defendant as the beneficial owner of the UBS Colsa Account. UBS was directed to send all correspondence relating to the UBS Colsa Account to Sinco. As

1  of in or about May 2008, the UBS Colsa Account held
2  approximately $4,927,500 in assets.

3       (k)  In or about May 2008, in order to prevent his assets
4  at UBS from being discovered, defendant opened and caused to be
5  opened an undeclared account at Swiss Bank A in the name of the
6  Colsa Foundation (the "Swiss Bank A Colsa Account") and
7  transferred assets from the UBS Colsa Account to the Swiss Bank
8  A Colsa Account.  Defendant later made a partial disclosure of
9  the Swiss Bank A Colsa Account on his individual income tax
10  returns.

11       (l)  In or about June 2009, in order to prevent his assets
12  at Credit Suisse from being discovered, defendant closed the
13  Undeclared Dan Kalili Credit Suisse Account and the Undeclared
14  Joint Kalilis Credit Suisse Account and transferred the funds.
15  As of in or about May 2009, the Undeclared Joint Kalilis Credit
16  Suisse Account held approximately $2,561,508 in assets.

17       (m)  In or about 2009, defendant opened and caused to be
18  opened an undeclared account at Israeli Bank A.  As of in or
19  about December 2009, defendant's undeclared account at Israeli
20  Bank A had approximately $1,569,973 worth of assets.

21       (n)  In or about 2009, defendant opened and caused to be
22  opened an undeclared account at Bank Leumi.  As of in or about
23  December 2009, defendant's undeclared account at Bank Leumi had
24  approximately $2,497,931 worth of assets.

25       (o)  For each of the calendar years from at least 1998
26  through 2007, defendant filed and caused to be filed with the
27  IRS a U.S. Individual Income Tax Return, Form 1040.  On each of

28                                23

these returns, defendant knowingly and willfully failed to
report as income dividends, interest, and other income received
by him in one or more bank, securities, and other financial
accounts at UBS and Credit Suisse.  On Schedule B attached to
each of these returns, defendant knowingly and willfully failed
to disclose that he had an interest in or signature authority
over a financial account in Switzerland when, in truth and in
fact, and as defendant then and there well knew, he had an
interest in and signature authority over a financial account in
Switzerland.

(p)  For each of the calendar years from at least 1998
through 2009, defendant failed to file, and failed to cause to
be filed, with the IRS an FBAR disclosing his signatory or other
authority over his accounts and his relatives' accounts at UBS
and Credit Suisse, as well as his accounts at Israeli Bank A and
Bank Leumi.

(q)  On or about April 26, 2011, Special Agents with the
U.S. Internal Revenue Service, Criminal Investigation Division
("IRS-CI") interviewed defendant.  During this interview,
defendant acknowledged that he was aware of the legal
requirement to report his interests in foreign bank accounts and
to file FBARs in regard to foreign bank accounts that held over
$10,000.  During the interview, defendant falsely stated that he
had declared his accounts at UBS when, in fact, he had not.
Defendant also falsely stated that he had only opened an account
at UBS in 2006.

1        (r)   On or about April 27, 2011, during a telephone

2    conversation, defendant acknowledged to IRS-CI special agents

3    that he had learned of the IRS's Voluntary Disclosure Program

4    (the "VDP") earlier in 2011.  The VDP is a program established

5    by the IRS in which participants can report previously

6    undeclared foreign accounts to the IRS and, inter alia, pay a

7    fine in exchange for the IRS not recommending to the Department

8    of Justice that the participant be criminally prosecuted.  After

9    speaking with the special agents, defendant attempted to enter

10   the program.  Because the IRS was already aware of defendant's

11   undeclared accounts, he was ineligible for the program and his

12   application was denied.

13       (s)   On or before the filing due dates listed below, in the

14   Central District of California and elsewhere, defendant did

15   knowingly and willfully fail to file with the Commissioner of

16   the IRS an FBAR disclosing that he had a financial interest in,

17   and signature and other authority over, a bank, securities, and

18   other financial account in a foreign country, to wit, at least

19   one foreign bank, securities, and other financial account at

20   UBS, Credit Suisse, Israeli Bank A, or Bank Leumi, which had an

21   aggregate value of more than $10,000 during each of the years

22   listed below:

23   ///

24   ///

25

26

27

28                                      25

| Calendar Year | Due Date to File FBAR | Bank(s) |
|---|---|---|
| 2006 | June 30, 2007 | UBS and Credit Suisse |
| 2007 | June 30, 2008 | UBS and Credit Suisse |
| 2008 | June 30, 2009 | UBS and Credit Suisse |
| 2009 | June 30, 2010 | Credit Suisse, Israeli Bank A and Bank Leumi |

///

///

### CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____                     10/10/16
DAN FARHAD KALILI                                   Date
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am DAN FARHAD KALILI's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge, no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

EDWARD M. ROBBINS, JR., Esq.
Counsel for Defendant
DAN FARHAD KALILI

10/10/2016
Date

28